| | | |
|---|---|---|
| MARY F DOWNS<br>2308 North Rosedale Street<br>Baltimore, MD 21216 | * <br> * | IN THE <br><br> CIRCUIT COURT |
| Plaintiff | * | FOR |
| v. | * | BALTIMORE CITY |
| M&T BANK CORPORATION<br>dba M&T BANK<br>1 M&T Plaza<br>Buffalo, NY 14203 | *<br><br>*<br><br>* | Case No. 24-C-08-003077 |
| Serve On:<br>RALPH V. PARTLOW III<br>22nd Floor<br>25 S. Charles Street<br>Baltimore, MD 21201 | *<br><br>*<br><br>* | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

Comes now the Plaintiff, Mary F. Downs, by and through her attorney, Patrick G. Cullen of Rollins, Smalkin, Richards & Mackie, LLC, and sues the Defendant, M&T Bank and Manufacturers and Traders Trust Company, and in support thereof states:

1. That the Defendant M&T Bank is a Maryland Corporation with its principal place of business in Buffalo, New York, carrying on regular business activities in Baltimore City, Maryland.

2. That the Plaintiff is a Baltimore City resident.

3. That jurisdiction and venue are proper in this court.

## Facts Common to All Counts

4. That by a deed from William & Edith Carruth to Plaintiff, dated March 12, 1969 and recorded in the land records for the Baltimore City Circuit Court in Liber RHB 2491, Folio 524, fee simple title to 2308 North Rosedale Street, vested in Plaintiff.

5. That as of April 26, 2007, Plaintiff's property at 2308 North Rosedale Street was secured as collateral for a loan made by Chase Bank to Plaintiff, said loan being known as number 0024054215, for which her average monthly payment was seven hundred forty six dollars and ninety cents ($746.90).

6. That on or about April 26, 2007, Aaron Rich contacted Plaintiff by telephone and engaged her in a conversation for the purpose of persuading her to refinance the aforementioned loan, held by Chase Bank.

7. That at all times relevant hereto, Aaron Rich was acting as the agent of the Defendant, acted under express authority to consult individuals on matters regarding residential loans offered by Defendant, and acted under express authority to assist them in completing applications for residential loans offered by Defendant.

8. That Plaintiff completed an application for a residential loan pursuant to her conversation with Aaron Rich. On her application to Defendant, her monthly income is listed as two thousand four hundred seventy three dollars ($2,473.00)

9. The Plaintiff advised Aaron Rich as to what her monthly payments were under her loan arrangement with Chase Bank and that it was her goal to obtain lower interest rates and reduce her monthly payments. She emphasized that the purpose for the refinance arrangement with the Defendant was to save money. Mr. Rich assured the Plaintiff that the numbers presented to her were to be her monthly payment figures and that she would save money. The

Defendant's employee who brought the final documents to her home for signature advised her that her payments listed in the documents referred to monthly payments rather than bi-weekly payments.

10. That on or about April 26, 2007, Aaron Rich, acting as agent for the Defendant, represented to the Plaintiff that upon approval of the residential loan application, she would be required to make monthly payments of two hundred ninety three dollars and eighty-five cents ($293.85), for three hundred and sixty monthly payments (360), to pay off a loan of ninety seven thousand dollars ($97,000) at six and ninety eight hundredths of a percent interest (6.098%).

11. Before the final loan documents were presented to her, the Plaintiff told the Defendant's employee that she did not want a bi-weekly payment schedule nor did she want an automatic withdrawal procedure whereby the Defendant could take money from her account without her participation. She had always had a monthly payment plan and had paid by check and she wanted to continue as she had in the past.

12. That on or about April 26, 2007, the representation made by Aaron Rich, and referenced in the preceding paragraph, was reflected on an M&T Bank "Lock-In Agreement" form, and signed by Aaron Rich in his capacity as agent of the Defendants.

13. That on or about May 9, 2007, Defendant approved a residential loan to Plaintiff. The loan approval form was finalized by Carlie Lawrence, and listed the monthly payments as two hundred ninety two dollars and fifty-nine cents ($292.59), for three hundred and thirty four bi-weekly payments (360), to pay off a loan of ninety seven thousand dollars ($97,000) at six and fifty eight hundredths of a percent interest (6.058%).

14. That at all times relevant hereto, Carlie Lawrence was acting as the agent of Defendant, had express authority to act as a mortgage representative for the Defendant, and acted

under express authority to approve or deny loans for the Defendant based upon the information contained in loan applications.

15. That the document authorizing the loan to Plaintiff, and prepared by Carlie Lawrence, contained a notation stating: "borrower's dependant $632/mo Social Security benefit and $433/mo Social Security benefit will continue for at least 3 more years."

16. That in a Deed of Trust dated June 12, 2007 and recorded in the land record of Baltimore City Circuit Court in Liber FMC 9605, Folio 545, the Plaintiff granted the Defendant an interest in the property at 2308 North Rosedale Street.

17. That on said Deed of Trust the monthly payment owed by Plaintiff to Defendant is listed as two hundred ninety two dollars and fifty-nine cents ($292.59).

18. That on the same day Defendant generated a Truth-In-Lending Disclosure Statement listing the bi-weekly payments due from Plaintiff as two hundred ninety five dollars and ninety-one cents ($295.91).

19. That subsequent to Plaintiff's assent to the terms of the loan, from the period of June 6, 2007 to August 2, 2007, Plaintiff was charged three hundred seventy five dollars and thirty-seven cents ($375.37) bi-weekly for payments towards the principle and interest accrued on her mortgage with Defendant.

20. That from the period of August 3, 2007 to present, Plaintiff was charged three hundred seventy seven dollars and eight cents ($377.08) bi-weekly for payments towards the principle and interest accrued on her mortgage with Defendant.

21. That the higher charge was for additional payments into escrow accounts for hazard insurance and property taxes and assessments. The Defendant had previously failed to disclose that these costs would be additional to the monthly payments for principle and interest.

22. That Plaintiff has not failed to make any mortgage payments to Defendant.

23. That on January 31, 2008 and February 28, 2008, the Plaintiff's checking account was overdrawn as a result of mortgage payments made to the Defendant.

24. The Defendants set up an automatic transfer of funds from Plaintiff's account to the bank's account in such a way that the transfer was done before Plaintiff's retirement check and social security check were automatically deposited to her account. The Defendant knew or should have known of the date(s) of those automatic deposits. Thus, because of the Defendant's scheduling of the automatic withdrawals, there were insufficient funds to cover the withdrawal and the Plaintiff was charged a surcharge for "insufficient funds."

25. That as a result of the transactions mentioned in the preceding paragraph, Plaintiff was assessed sixty-four dollars ($64.00) in insufficient funds fees.

26. That no modification to the terms of the loan was made known in writing to Plaintiff.

27. As soon as she discovered by review of her statements of account from the Defendant what the reality of the situation was, Plaintiff tried to contact Aaron Rich and his supervisor, both of whom were next to impossible to contact and did not respond to her calls within a reasonable time.

## COUNT I (Injunctive Relief)

28. Plaintiff incorporates by reference all the facts and allegations contained in paragraphs one (1) through twenty-seven (27) of this complaint.

29. That Defendant's actions, charging mortgage payments to the Plaintiff of three hundred seventy seven dollars and eight cents ($377.08) bi-weekly, constitute a breach express warranty made by Aaron Rich, on the behalf of the Defendant, to the Plaintiff.

30. That Defendant's actions, charging mortgage payments to the Plaintiff of three hundred seventy seven dollars and eight cents ($377.08) bi-weekly, constitute a breach of the terms of the residential loan made from the Defendant to Plaintiff.

31. That Defendant's actions, charging mortgage payments to the Plaintiff of three hundred seventy seven dollars and eight cents ($377.08) bi-weekly, violate the terms of the mortgage filed in the land records of Baltimore City.

32. That Plaintiff does not earn a substantial monthly income and has been economically burdened by the mortgage payments demanded by Defendant.

33. The Plaintiff had been a customer of the Defendant's predecessor, First National Bank, since 1965. Her tenure as a long-term customer of the bank meant nothing at all to the Defendant with whom she also had an account.

34. That continued violation of the agreement between Plaintiff and Defendant exposes Plaintiff to an unreasonable risk of financial harm.

35. The Defendant have refused to rewrite the loan documents to provide the Plaintiff with what she was told she was going to receive by way of a lower payment than what she had that she could pay be check on a monthly basis.

WHEREFORE, the Plaintiff requests that this Court enter injunctive relief in its favor against the Defendant, and further requests:

(a) That the total bi-weekly mortgage payments of three hundred seventy seven dollars and eight cents ($377.08) be reduced to two hundred ninety two dollars and fifty-nine cents ($292.59), inclusive of everything owed:

(b) That the Court enjoin the Defendant from collecting more than one mortgage payment each calendar month:

(c) That the Court enjoin the Defendant from altering the terms of the loan at a future date, or:

(d) That the Court grant such injunctive relief that the interests of justice may require, in prevention of future financial brutality.

### COUNT II (Breach of Contract)

36. Plaintiff incorporates by reference all the facts and allegations contained in paragraphs one (1) through thirty-five (35) of this complaint.

37. That the Defendant offered a residential loan to Plaintiff at the rate lower than what she was paying to Chase Bank.

38. That Plaintiff accepted the terms of the loan with the understanding that her payments would be less than what she was paying to Chase Bank.

39. That the Defendant did not incorporate by reference, on the face of the loan agreement, any other documents that defined Plaintiff's payment schedule.

40. That Defendant breached the terms of the loan agreement when it charged Plaintiff three hundred seventy seven dollars and eight cents ($377.08) bi-weekly.

41. That as a result of this breach, Plaintiff has sustained substantial economic damage.

WHEREFORE, as a result of the foregoing financial brutality, the Plaintiff requests that this Court enter judgment against the Defendant in its favor in the amount of two thousand six hundred thirty seven dollars and four cents ($2,637.04).

### COUNT III (Fraudulent Inducement to Contract)

42. Plaintiff incorporates by reference all the facts and allegations contained in paragraphs one (1) through forty-one (41) of this complaint.

43. Plaintiff contracted with the Defendant for a residential loan.

44. The Defendant, through its agent, Aaron Rich, on April 26, 2007, intentionally represented that the loan would be payable monthly at a rate less than she was paying Chase Bank.

45. The Defendant, through its agent, Aaron Rich, had actual knowledge of the falseness of this statement.

46. The Defendant, through its agent, Aaron Rich, knew on April 26, 2007 that payment from the Plaintiff would be due bi-weekly and that additional escrow charges would be added to the total due for principle and interest.

47. The Plaintiff lacked the ability to discover through her own due diligence the misrepresentations of the Defendant.

48. The misrepresentations of the Defendant were conscious and deliberate.

49. Plaintiff would not have agreed to the terms of the loan if the truth had been made known to her.

50. As a result of Defendant's fraud Plaintiff has sustained substantial economic damage. WHEREFORE, as a result of the foregoing financial brutality, the Plaintiff requests that this Court enter judgment against the Defendant, punitive damages equal to six hundred ninety five thousand dollars ($695,000) plus actual damages of two thousand six hundred thirty seven dollars and four cents ($2,637.04).

### COUNT IV (Unjust Enrichment)

51. Plaintiff incorporates by reference all the facts and allegations contained in paragraphs one (1) through fifty (50) of this complaint.

52. A contractual relationship existed between Plaintiff and the Defendant regarding a residential loan.

53. Plaintiff, pursuant to her contractual obligations, made payments to the Defendant in excess of the amount due under the loan agreement.

54. The Plaintiff, as a result of said payments, has conferred upon the Defendant a monetary benefit.

55. The Defendant, through its agents, Aaron Rich and Carlie Lawrence, had knowledge of the benefit conferred upon them by the Plaintiff.

56. The Defendants has unfairly accepted and retained the benefit conferred by the Plaintiff to their benefit, and to the detriment of the Plaintiff.

WHEREFORE, as a result of the foregoing financial brutality, the Plaintiff requests that this Court enter judgment against the Defendant, in its favor in the amount of two thousand six hundred thirty seven dollars and four cents ($2,637.04).

## COUNT V (Truth In Lending Act)

57. Plaintiff incorporates by reference all the facts and allegations contained in paragraphs one (1) through fifty-six (56) of this complaint.

58. Pursuant to 15 U.S.C. § 1639 (a)(2)(A), the Defendant, as a lender of residential mortgages, has a duty to disclose, *inter alia*, the amount of regular monthly repayment required of a debtor.

59. The Defendant is barred from making any changes in the information disclosed without first making additional disclosures in writing.

60. The Defendant disclosed to the Plaintiff that the regular monthly payment due would be less than she was paying Chase Bank.

61. No additional disclosures in writing were made by Defendant.

62. The Defendant, in defining payment schedule in the loan application materials stated: "The dollar figures in the Payment Schedule represent principal, interest, plus Private Mortgage Insurance (if applicable). These figures will not reflect taxes and insurance escrows or any temporary buydown payments contributed by the seller."

63. This statement was not presented to Plaintiff in a clear and conspicuous manner.

64. The Defendant's Truth-In-Lending Disclosure Statement, made on June 12, 2007, listing the bi-weekly payments due as two hundred ninety five dollars and ninety-one cents ($295.91), was presented as accurate to Plaintiff.

65. Pursuant to 15 U.S.C. § 1640 (a)(1), private individuals have a cause of action against creditors who fail to make the disclosures required by the Truth-In-Lending Act.

66. The Defendant failed to make the fair and accurate disclosures required by the Truth-In Lending Act.

67. As a result of Defendant's failure to properly disclose the terms of the mortgage, Plaintiff has sustained substantial economic damage.

WHEREFORE, as a result of the foregoing financial brutality, the Plaintiff requests that this Court enter judgment against the Defendant, in its favor in the amount of six hundred ninety seven thousand six hundred thirty seven dollars and four cents ($697,637.04), pursuant to each count in this complaint, including interest, attorneys' fees, punitive damages, and costs.

**Request for Jury Trial**

Plaintiff requests a trial by jury.

Respectfully Submitted,

_/s/ Patrick G. Cullen_
Patrick G. Cullen
Rollins, Smalkin, Richards & Mackie LLC
401 N. Charles St.
Baltimore, MD 21201
(410) 727-2443
*Attorney for Plaintiff*